# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**DELORIS G. MICHAEL,**

      **Plaintiff,**

  v.                                       Civil Action 2:18-cv-131
                                            Judge Michael H. Watson
                                            Magistrate Judge Jolson

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Deloris G. Michael, filed this action seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying her Title II Social Security Disability Benefits application. For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc. 12) be **OVERRULED**, and that judgment be entered in favor of Defendant.

**I. BACKGROUND**

    **A. Prior Proceedings**

Plaintiff filed an application for Title II Social Security Disability Benefits on August 10, 2012, alleging disability since January 1, 2007. (Tr. 77, PAGEID #: 136). Her application was denied initially (Tr. 77–88, PAGEID #: 136–47), after reconsideration (Tr. 91–104, PAGEID #: 150–63), and by an Administrative Law Judge (Tr. 106–14, PAGEID #: 165–73). By order dated February 8, 2016, the Appeals Council remanded the case for further proceedings. (Tr. 118–20, PAGEID #: 177–79). Specifically, the Appeals Council directed an Administrative Law Judge to evaluate Plaintiff's mental impairments on remand and further consider the opinion of medical expert Dr. James M. McKenna. (*Id.*).

Following the remand, Administrative Law Judge Jeffrey Hartranft (the "ALJ") convened a hearing on October 4, 2016, at which time Plaintiff amended her alleged onset date to December 9, 2010. (Tr. 37–75, PAGEID #: 95–133). On October 25, 2016, the ALJ issued an unfavorable decision. (Tr. 121–36, PAGEID #: 180–95). Plaintiff again requested review of the administrative decision to the Appeals Council. (Tr. 227, PAGEID #: 287). The Appeals Council adopted the ALJ's statements "regarding the pertinent provisions of the Social Security Act, Social Security Administration Regulations, Social Security Rulings and Acquiescence Rulings, the issues in the case, and the evidentiary facts, as applicable." (Tr. 4, PAGEID #: 62). Further, the Appeals Council adopted the ALJ's findings and conclusions regarding whether Plaintiff was disabled but made additional findings as to the testimony and opinion of the medical expert, Dr. McKenna, who testified at the first hearing. (Tr. 5, PAGEID #: 63). Ultimately, the ALJ found that Plaintiff was not under disability as defined in the Social Security Act during the relevant timeframe. (*Id.*).

Plaintiff filed this case on February 19, 2018 (Doc. 3), and the Commissioner filed the administrative record on April 27, 2017 (Doc. 9). Plaintiff filed a Statement of Specific Errors (Doc. 12), the Commissioner responded (Doc. 13), and no reply was filed.

### B. Relevant Testimony at the Administrative Hearings

#### *1. July 7, 2014 Hearing*

Plaintiff testified that she was not able to work due to "trouble with [her] legs" and problems breathing, including "get[ting] short-winded very easily." (Tr. 17, PAGEID #: 75). As to her legs, Plaintiff stated: "I can't sit very long because the backs of them hurt really bad. And then I have neuropathy in my feet, and then they kind of start going numb and crazy on me. And

2

so I have to elevate my legs a lot." (Tr. 18, PAGEID #: 76). Plaintiff stated that she was told she had neuropathy within the last year, but never had any testing done. (*Id.*).

At the hearing, Dr. James McKenna, MD, a board certified internal medicine and pulmonary disease physician, testified as a medical expert. (Tr. 23, PAGEID #: 81). The relevant portion of his testimony is as follows:

> ALJ: Can you tell me, Doctor, based upon your review of the file, the impairments that are documented, as of the date last insured?
>
> ME: Yes. And Your Honor, would have been exogenous morbid obesity and – of a mild to moderate degree, with a BMI of 43.5. . . . There was a history of certain sleep apnea, and I didn't see that polysomnogram in the file . . .
>
> \*\*\*
>
> ME: And then rehab, the – we have the knee issue and, at the consultative examination, they did a x-ray of her knee. And that showed that the was – on 8/10/10. So that was definitely prior to her date last insured. And there was mild narrowing of the medial compartments of the knee joint. And the lateral compartment and the patellofemoral was normal. So it was determined early, in terms of arthritis. There's evidence that she has a fatty liver, on some of the imaging studies. But that was, I think, more recently. I don't think it goes back quite that far. And there were studies, pulmonary function tests done to see how she could do the huffing and puffing. And she did amazingly well on the test back from 9/21/09. That's in 1-F page –
>
> ALJ: 11, I believe.
>
> ME: Yeah. 1-F, page 11, yes. . . so it's near normal, but it's not quite normal. . . .
> Then lastly, we have the nicotine dependence. It appears that she was again smoking at quite a brisk rate for awhile [sic], and at a rate of up to two packs per day. Or no, I'm sorry, I take that back. I'm not quite sure if – actually, I don't really see the smoking mentioned, like they found.
>
> CLMT: I know I smoked years ago, but I've never smoked two packs a day.
>
> \*\*\*
>
> ME: ... So that's basically about it, Your Honor. The morbid obesity would be a severe impairment. If we assume that her sleep apnea's going to be controlled on

3

CPAP, that could be a severe impairment, but it's possibly non-severe. The obstructive sleep apnea was not detected during the period under review, so that doesn't apply.

The fatty liver was, and knee degenerative arthritis was evident at that time. Now for somebody with that level of obesity, I'm not quite sure that the – with the mild narrowing, you usually have quite [inaudible] pain and cartilage without any defects. So it's just slightly thin. So it would not quite be enough, at the level of obesity, to – with a BMI in the 40 to 45 range – we're not quite enough to restrict her to a sedentary level of activities. So I think she could stand and walk for six out of eight hours –

\*\*\*

ALJ: Now for the RFC you feel to be appropriate, Doc?

ME: I think the combination of the exogenous obesity and the mild degenerative joint disease would limit her to light levels, Your Honor, so that she should not be required to lift more than 20 pounds occasionally and 10 pounds frequently.

ALJ: Leave the standing or walking six out of eight?

ME: I don't see a limitation – yeah, six out of eight. I don't see a limitation, specifically, for that, Your Honor. And I don't see a limitation to use foot controls or pushing and pulling.

(Tr. 23–27, PAGEID #: 81–85).

### 2. October 4, 2016 Hearing

After the Appeals Council remanded the case, Plaintiff's counsel began the second hearing by explaining that Plaintiff was 62 years old, had a seventh-grade education, and was suffering from morbid obesity, right knee dysfunction, a fatty liver, and COPD. (Tr. 42, PAGEID #: 100). Plaintiff described her previous employment history, which included caring for her friend's sick father, working as a powder cutter technician, a forklift operator, and a battery installer, as well as additional temporary jobs. (Tr. 46–53, PAGEID #: 104–11).

The ALJ asked Plaintiff to explain what type of problems she was having during the time

4

frame at issue, namely 2010 and 2011. (Tr. 54–55, PAGEID #: 112–13). Plaintiff explained that she was having trouble with her feet, legs, knees, back and breathing. (Tr. 55, PAGEID #: 113). More specifically, Plaintiff testified that her feet and legs "just hurt real bad and, and it's like I couldn't get them rested at night" (Tr. 56, PAGEID #: 114); her back hurt and she "really couldn't walk right" (*id.*); and she was "getting out of breath easily" (Tr. 57, PAGEID #: 115). Plaintiff also testified that she couldn't remember whether she was having any problems with depression or anxiety in 2011. (Tr. 61, PAGEID #: 119).

Vocational Expert Dr. Finch (the "VE") testified at the hearing as well. (Tr. 68, PAGEID #: 126). The ALJ posed the following hypotheticals to the VE:

> Q: I'd like you to assume that the claimant is capable of working at the medium exertional level. Is she able to perform any of her past work?
>
> A: Well, she could perform the forklift operator position and, and maybe one of the factory laborer positions. Oh, excuse me – also I guess the care attendant would be able to be performed as is typically performed, not as –
>
> Q: I thought you said it was heavy as – as typically performed?
>
> A: It's classified as medium.
>
> Q: Okay.
>
> A: And she performed it at heavy.
>
> \*\*\*
>
> Q: . . . If I add in that the – claimant would be capable of simple routine and repetitive tasks involving only simple work related decisions and deal with any workplace changes. And then she could work in positions that did not require strict production quotas or faced [sic] pace work such as on an assembly line. Would that change your opinion as to the ability to do the past work?
>
> A: I don't think a person with, with her work history and, and those limitations could perform the past work.
>
> \*\*\*

5

> Q: So let's go back to the [] hypothetical, which is just medium with the mental restrictions. Are you able to – I'd like you to assume a hypothetical individual with the claimant's educational and vocational background. Are you able to identify any work for such an individual?
>
> A: Yes, and I'll give you three examples.

(Tr. 69–71, PAGEID #: 127–29). The VE then testified that Plaintiff could perform as a grocery stocker, a dish washer, and a laundry worker. (Tr. 71, PAGEID #: 129).

### C. The ALJ's 2016 Decision

The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2011. (Tr. 126, PAGEID #: 185). The ALJ explained that because a claimant must establish disability prior to the expiration of the insured status, Plaintiff must demonstrate she was disabled on or before the date. (*Id.*). Consequently, the ALJ noted that "[e]vidence of new developments in a claimant's impairments after the expiration of insured status is generally not relevant." (*Id.* (citing *Bagby v. Harris*, 650 F.2d 836 (6th Cir. 1981)). The ALJ further found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of December 9, 2010, to her date last insured. (Tr. 127, PAGEID #: 186).

The ALJ found that Plaintiff suffered from the following severe impairments: obesity, degenerative joint disease, and adjustment disorder with depressed mood. (*Id.*). Despite these impairments, the ALJ held that Plaintiff did not have an impairment or combination of impairments that met or equaled a listing. (*Id.*).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ stated:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) with the following additional limitations: The claimant could frequently climb ramps or stairs. She could occasionally climb ladders, ropes, or scaffolds. From a mental standpoint, she would be capable of

> simple, routine, and repetitive tasks, involving only simple work related decisions and with few, if any, workplace changes, and no strict production quotas or fast-paced work, such as on an assembly line.

(Tr. 129–30, PAGEID #: 188–89).

The ALJ held that through the date last insured, Plaintiff was capable of performing past relevant work as a care attendant (as generally performed) and forklift operator (as both generally and actually performed). (Tr. 134, PAGEID #: 193). In making this finding, the ALJ noted that he was "accept[ing] and adopt[ing] the testimony of the vocational expert . . . " and that "[t]here was no credible evidence to contradict the vocational expert's opinion." (Tr. 134–35, PAGEID #: 193–94). The ALJ also made an alternative finding at Step Five, holding that based on the VE's testimony, and considering Plaintiff's age, education, work experience, and RFC, there were other jobs that existed in the national economy that Plaintiff could have performed. (Tr. 135, PAGEID #: 194). Specifically, Plaintiff could work as a grocery stocker (700 jobs regionally, 15,000 jobs statewide, 180,000 jobs nationally); a dishwasher (1,000 jobs regionally, 25,000 jobs statewide, 160,000 jobs nationally); and a laundry worker (900 jobs regionally, 8,000 jobs statewide, 200,000 jobs nationally). (Tr. 136, PAGEID #: 195).

### D. The Appeals Council's Decision

As previously noted, the Appeals Council adopted the ALJ's findings and conclusions regarding whether Plaintiff was disabled, but made additional findings as to the testimony and opinion of Dr. McKenna:

> At the hearing, Dr. McKenna opined the claimant could perform light exertional level work without any restrictions in standing or walking. In considering this opinion, the Appeals Council finds it inconsistent with the physical examination findings from the consultative examination and the remainder of the record.
>
> Notably, on August 10, 2010, Phillip Swedberg, M.D., conducted a consultative

> examination. He noted that the claimant indicated she was unable to work due to lower extremity pain after ambulation. However, Dr. Swedberg's examination showed adequate peripheral pulses and no evidence of peripheral vascular insufficiency. In addition, there was no venous cording or calf tenderness. Further, the claimant had a negative Homan's sign; ambulated with a normal gait; neuromuscular examination was entirely normal; no evidence of muscle weakness or atrophy; and no evidence of crepitus or ligamentous laxity over the knee joints. Based on the findings of the examination, Dr. Swedberg opined the claimant appeared capable of performing a moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, and lifting and carrying heavy objections. The claimant also exhibited no difficulty reaching, grasping, or handling objects; had no visual and/or communication limitations; and there were no environmental limitations.
>
> Moreover, the remainder of the record does not contain treatment for any musculoskeletal or lower extremity impairment through the date last insured.

(Tr. 5, PAGEID #: 63). Consequently, the Appeals Council assigned partial weight to Dr. McKenna's opinion. (*Id.*).

The Appeals Council further adopted the ALJ's finding that Plaintiff was capable of performing past relevant work, and alternatively, that jobs exited in significant numbers in the national economy that the claimant could perform. (*Id.*). Thus, the Appeals Council held Plaintiff was not under disability at any time from the alleged onset date through the date last insured. (*Id.*).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

8

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

Plaintiff asserts two assignments of error: (1) that the ALJ erred in failing to evaluate the opinion of Dr. McKenna and (2) that the ALJ erroneously found that Plaintiff could perform her past relevant work. (Doc. 12).

### A. Consideration of Dr. McKenna's Opinion

Plaintiff argues that the ALJ's failure to cite or evaluate Dr. McKenna's opinion from the first hearing is "harmful error." (Doc. 12 at 9–10). Because Dr. McKenna opined that Plaintiff was limited to light work activity, Plaintiff contends that when also considering her age, education, and inability to perform past relevant work, a finding of disability was required under the guidelines. (*Id.* at 10 (citing 20 C.F.R. Part 404, Subpart P, App'x 2 § 202.02)). Plaintiff's argument is flawed in two ways. One, her argument assumes Dr. McKenna's opinion should have been adopted in full, and, two, it focuses on the ALJ's decision, rather than the Appeals Council's decision.

As the Commissioner correctly notes, "when the Appeals Council issues a decision, it is that decision which is the final decision of the Commissioner that is then subject to judicial

9

review." *Garcia v. Comm'r of Soc. Sec.*, No. 1:16 CV 920, 2017 WL 9485644, at *1 (N.D. Ohio July 26, 2017), *adopted by*, No. 1:16-CV-920, 2017 WL 3380986 (N.D. Ohio Aug. 7, 2017), *aff'd*, No. 17-3970, 2018 WL 2146458 (6th Cir. May 10, 2018) (citing 20 C.F.R. §§ 404.981, 404.697, 420.210(a); *Mullen*, 800 F.2d at 538). In other words, when a federal court "reviews a decision of the Appeals Council, it is that decision, not the prior decision of the ALJ, which is before the court." *Id.* While Plaintiff is correct that the ALJ's opinion did not cite or evaluate Dr. McKenna's testimony, she fails to acknowledge that the Appeals Council's decision did.

The Appeals Council expressly stated that it was giving only partial weight to Dr. McKenna's opinion because it was found to be "inconsistent with the physical examination findings from the consultative examination and the remainder of the record." (Tr. 5, PAGEID #: 63). Specifically, the Appeals Council noted that Dr. Swedberg's August 2010 evaluation of Plaintiff demonstrated adequate peripheral pulses, normal ambulation, a negative Homan's sign, no evidence of muscle weakness or atrophy. (*Id.*). As a result, Dr. Swedberg opined that Plaintiff was capable of performing a moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, and lifting and carrying heavy objections. (*Id.*). Moreover, the Appeals Council explained that the remainder of the record did not contain treatment for any musculoskeletal or lower extremity impairment through the date last insured. (*Id.*).

Thus, there was conflicting evidence regarding Plaintiff's abilities, and the Appeals Council relied on appropriate factors in resolving the conflict. *See, e.g.*, *Ray v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 718, 727 (S.D. Ohio 2013) ("It is the Commissioner's function to resolve conflicts in the medical evidence[.]") (citing *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987)). Accordingly, the Appeals Council's decision to assign partial

weight to Dr. McKenna's opinion was supported by substantial evidence, and no "harmful error" occurred. *See Garcia*, 2017 WL 9485644, at *4.

**B. Plaintiff's Past Relevant Work**

During Plaintiff's second hearing, the VE, when presented with the RFC limitations eventually assigned to Plaintiff, testified as follows: "I don't think a person with, with her work history and, and those limitations could perform past work." (Tr. 70, PAGEID #: 128). Despite this testimony, both the ALJ and the Appeals Council held that Plaintiff could perform her past relevant work and stated that they were relying on the VE's testimony. (*See* Tr. 134–35, PAGEID #: 193–94 (the ALJ holding that he was "accept[ing] and adopt[ing] the testimony of the vocational expert" and that "[t]here was no credible evidence to contradict the vocational expert's opinion."); Tr. 5, PAGEID #: 63 ("The Appeals Councils further adopts all of the findings of the Administrative Law Judge, ultimately finding the claimant was capable of performing past relevant work as a forklift operator as both generally and actually performed")).

Plaintiff contends that this error should result in a finding "that the ALJ's decision as a whole fails to rely on substantial evidence, and thus, should be vacated and this claim remanded for further proceedings, with direction to properly determine [her] ability to perform her Past Relevant Work." (Doc 12 at 8). The Commissioner does not dispute the error. Instead, the Commissioner explains that because the Appeals Council's decision (and the ALJ's decision) made an alternate finding at step five, the decision is still supported by substantial evidence. (Doc. 13 at 8–10). The Court agrees.

"Even if claimant's impairment does prevent [her] from doing his past relevant work, if other work exists in the national economy that accommodates [her] residual functional capacity

11

and vocational factors (age, education, skills, etc.), [s]he is not disabled." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520 (1997)). It is thus well-established that if an ALJ makes additional findings at step five that are supported by substantial evidence, any error at step four is harmless. *See, e.g.*, *Gaskin v. Comm'r of Soc. Sec.*, No. 14-10859, 2015 WL 268335, at *4 (E.D. Mich. Jan. 21, 2015) ("Errors at step four are considered harmless when the ALJ makes an alternative determination at step five, and finds that a claimant can perform work that exists in significant numbers in the national economy.") (citing *Rice v. Comm'r of Soc. Sec.*, No. 12–CV–15690, 2014 WL 521045, at *8 (E.D. Mich. Feb. 10, 2014)).

Here, the Appeals Council adopted the Administrative Law Judge's finding that "when considering the claimant's age, education, work experience, and residual functional capacity, there are [] jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 5, PAGEID #: 63). Indeed, the ALJ relied on the VE's testimony at the second hearing to find that there were a significant number of jobs in the national economy that Plaintiff could perform, including a grocery stocker (700 jobs regionally, 15,000 jobs statewide, 180,000 jobs nationally); a dishwasher (1,000 jobs regionally, 25,000 jobs statewide, 160,000 jobs nationally); and a laundry worker (900 jobs regionally, 8,000 jobs statewide, 200,000 jobs nationally). (Tr. 71, 136, PAGEID #: 129, 195). The Appeals Council's ultimate conclusion was thus supported by substantial evidence, and any error at step four was harmless.

## IV. CONCLUSION

For the reasons stated, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc. 12) be **OVERRULED** and that judgment be entered in favor of Defendant.

**Procedure on Objections**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

IT IS SO ORDERED.

Date: July 20, 2018                         /s/ Kimberly A. Jolson
                                            KIMBERLY A. JOLSON
                                            UNITED STATES MAGISTRATE JUDGE